JESSE A.P. BAKER (OBS No. 100017)
**ALDRIDGE PITE, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92117-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for Secured Creditor: JPMorgan Chase Bank,
National Association

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| In re | Case No. 17-60930-TMR13 |
|---|---|
| TONYA SUE KERNS and TRAVIS WAYNE KERNS, | Chapter 13 |
| Debtors. | **STIPULATION RE: MOTION TO VALUE PROPERTY PURSUANT TO 11 U.S.C. §506 AND AVOID WHOLLY UNSECURED LIEN IN A CHAPTER 13 CASE** |
| | **Subject Property:** 77315 London Road Cottage Grove, OR 97424 |

This Stipulation Re: Motion to Value Property Pursuant to 11 U.S.C. §506 and Avoid Wholly Unsecured Lien in a Chapter 13 Case ("**Stipulation**") is entered into by and between Secured Creditor, JPMorgan Chase Bank, National Association ("**Creditor**"), by and through its counsel of record, Aldridge Pite, LLP and Debtors, Tonya Sue Kerns and Travis Wayne Kerns (the "**Debtors**"), by and through their attorney of record, Judson M Carusone.

The real property which is subject of this matter is commonly known as 77315 London Road, Cottage Grove, Oregon 97424 (hereinafter the "**Subject Property**"). *See, Exhibit B*

/././

/././

/././

/././

/././

/././

*Creditor's Claim:*

The Loan is evidenced by a promissory note dated December 10, 2003, executed by Debtors to Washington Mutual Bank ("**Lender**") in the principal sum of $27,400.00 (the "**Note**"). A copy of the Note is attached hereto as **Exhibit A** and incorporated herein by reference.

The Note is secured by a Deed of Trust (the "**Deed of Trust**") granting Lender a security interest in the Subject Property, which is more fully described in the Deed of Trust, The Deed of Trust was recorded on or about December 29, 2003, in the official records of the Lane County, County Recorder's Office. A copy of the Deed of Trust is attached hereto as **Exhibit B** and incorporated herein by reference. The Note and Deed of Trust may be referred to herein collectively as the "**Loan**".

Subsequently, all of the Lender's beneficial interest in the Loan was assigned and transferred to Creditor. The Note reflects that it is endorsed in blank. Attached hereto as **Exhibit C** and incorporated herein is a copy of the Assignment of Deed of Trust.

On or about March 29, 2017, Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Oregon, and was assigned Case No. 17-60930-TMR13.

On or about May 19, 2017, Debtor filed a Motion to Value Property Pursuant to 11 U.S.C. §506 and Avoid Wholly Unsecured Lien in a Chapter 13 Case ("**Motion**") seeking to avoid and deem wholly unsecured Creditor's second lien encumbering the Subject Property.. *See, Docket No. 30*

**THE PARTIES STIPULATE AS FOLLOWS:**

The avoidance of Creditors' Deed of Trust is contingent upon completion of Debtors' Chapter 13 plan and Debtors' receipt of a Chapter 13 discharge.

2.      Upon Debtors' completion of a Chapter 13 Plan, Defendant's Deed of Trust shall be void and this Stipulation and any Judgment thereon may be recorded by the Debtors' in the County Recorder's Office.   Debtor mayrequest, in his sole discretion, that Creditor execute a full reconveyance or other lien release document need to statisfy a title company that the lien is released.

3.      Creditor shall retain its lien for the full amount due under the Subject Loan in the event of either the dismissal of Debtors' Chapter 13 case or the conversion of Debtors' Chapter 13

case to any other Chapter under the United States Bankruptcy Code.

4. In the event that the holder of the first lien on the Subject Property forecloses on its security interest and extinguishes Creditor's Second Deed of Trust prior to Debtors 'completion of a Chapter 13 Plan and receipt of a Chapter 13 discharge, Creditor's lien shall attach to the surplus proceeds of the foreclosure sale for the full amount of the Subject Loan balance at the time of the sale.

5. In the event that the Debtors attempt to sell or refinance the Subject Property prior to the completion of a Chapter 13 Plan and receipt of a discharge, Creditor will retain its lien for the full amount of the Subject Loan balance at the time of the sale unless after notice and court approval the sale or refinance is allowed..

6. Each party shall bear their own attorney's fees in the present contested matter.

7. In the event that the Subject Property is destroyed or damaged, pursuant to the mortgage, Creditor may be entitled to its full rights as a loss payee with respect to the insurance proceeds and has a security interest in such proceeds up to the entire balance due on the mortgage. However, nothing in this Stipulation bars the Debtor from asserting a right to the insurance proceeds.

8. The terms of this Stipulation may not be modified, altered, or changed by the Plaintiffs' Chapter 13 Plan, any confirmation order thereon, any subsequently filed Amended Chapter 13 Plan of Reorganization and confirmation order thereon without the express written consent of Defendant. The terms of this Stipulation shall be incorporated into the Plaintiffs' Plan and/or any subsequently filed Amended Chapter 13 Plan of Reorganization.

/././

/././

/././

/././

/././

/././

/././

/././

1

2   Dated: _6/30/17_____          JUDSON M CARUSONE

3                                       _/s/ Judson M Carusone_____

4                                      Judson M Carusone  (OSB No. 942234)
                                       Attorney for Travis Wayne Kerns and Tonya
5                                      Sue Kerns

6

7   Dated: ___7/3/2017_____       ALDRIDGE PITE, LLP

8

9                                       _/s/Jesse A.P. Baker_____
                                       Jesse A.P. Baker (OSB No. 100017)
10                                     Attorneys for JPMorgan Chase Bank, National
11                                     Association

12
                                              ###
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A





# HOME EQUITY LINE OF CREDIT
## AGREEMENT AND DISCLOSURE

Date: 12/10/2003

Loan Number: ▓▓▓▓▓

**Introduction.** This Home Equity Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through ___WASHINGTON MUTUAL BANK___ . In this Agreement, the words "Borrower," "you," "your," "Customer," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named below. The words "we," "us," "our," "Bank," and "Lender" mean ___WASHINGTON MUTUAL BANK___ or any successor or assign. The word "Card" means each credit card that we issue that will enable you to obtain advances on your Credit Line, whether in the form of purchase transactions, cash advances or otherwise. You and we agree to the following terms and conditions.

**Promise to Pay.** You promise to pay to us, or our order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement. You will pay the Credit Line according to the terms of this Agreement. If there is more than one of you, each is jointly and severally liable on this Agreement. This means that we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you, even if in excess of the authorized Credit Limit. Each of you authorizes any other Borrower, on his or her request alone, to cancel the Credit Line, request and receive credit advances and to do all actions in connection with the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain fully responsible hereunder. By signing below, each of you requests that we issue each of you a Card.

Your use of the Card at automated teller machines is subject to our rules relating to ATM transactions.

**Credit Limit.** This Agreement covers a revolving line of credit for ___$27,400.00___ , which will be the "Credit Limit" under this Agreement. You may borrow against the Credit Limit, repay any portion of the amount borrowed and reborrow up to the amount of the Credit Limit. If there is more than one of you, each of you shall have the right to borrow up to the full amount of the Credit Limit, but the aggregate amount advanced to all of you shall not exceed the Credit Limit. Your Credit Limit is the maximum amount of the principal you may have outstanding at any one time. You agree not to attempt, request or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. We may, at our option, pay amounts requested in excess of your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to immediately repay the amount by which the balance of your Credit Line Account exceeds your Credit Limit, regardless of which of you requested the advance, and even if we have not yet billed you for such amount.

**Collateral.** To secure your performance of your obligations under this Agreement, you are giving us a deed of trust, trust indenture, mortgage or security agreement (the "Security Instrument") on real property located at: ___77315 LONDON RD   COTTAGE GROVE, OR 97424___ and other property described therein (the "Property"). The Security Instrument secures all advances and other amounts owed under the terms of this Agreement. The Security Instrument also covers after-acquired property located on or attached to real property described therein. Regardless of the terms of any other security instrument that you have with us, no personal property or real property, other than the Property covered by the Security Instrument or otherwise specifically referring to this Agreement, secures your obligations under this Agreement. You agree to perform your obligations under the Security Instrument in a timely manner.

**The Security Instrument Contains the Following Provisions Relating to Certain Sales, Transfers or Further Encumbrance of the Property:**
The loan is personal to Grantor and the entire debt shall become immediately due and payable in full upon any sale or other transfer of the Property or any interest therein by the Grantor including, without limit, any further encumbrance of the Property.

[X] If this box is checked, the following paragraph applies:
**Occupancy.** You represent you occupy the Property as your principal residence. If you (or if there is more than one, any one of you) cease to occupy the Property as your principal residence, we may, at our sole option, suspend or terminate all further borrowing privileges under this Agreement. You must immediately advise us if you cease to occupy the Property as your principal residence.

**Length of Draw and Repayment Period; Balloon Payment.** You may obtain advances of credit for up to ten (10) years after the date of this Agreement (the "Draw Period"). You may extend the Draw Period for up to ___TWO___ additional periods of ten (10) years each, provided that at the time of each extension: (i) no event is then existing that would entitle us to suspend or terminate your borrowing privilege to obtain advances as set forth herein; and (ii) we are then offering a line of credit program to new customers on terms other than ANNUAL PERCENTAGE RATE, substantially identical to those set forth in this Agreement. We reserve the right, in our sole discretion, to discontinue offering this line of credit program to new customers at any time. If we do decide to discontinue offering the program to new customers, there will be no further extensions of the Draw Period, but your right to obtain advances of credit for the remainder of the then current Draw Period and the repayment terms of your Account will not be affected. After the Draw Period ends, you will no longer be able to use your Cards, Checks or other means of access to obtain advances.

After the Draw Period ends, there may be a period during which payments will be due and payable under this Agreement but during which you will no longer be able to obtain advances (the "Post Draw Period"). If the Draw Period is for ten (10) years, the Post Draw Period will be for twenty (20) years; if the Draw Period is for twenty (20) years, the Post Draw Period will be for ten (10) years; if the Draw Period is for thirty (30) years, there will be no Post Draw Period and the entire balance hereunder will be due and payable at the end of the Draw Period. Lender may, at its option, make advances to pay costs and fees hereunder or under the Security Instrument even if the Draw Period has expired; FINANCE CHARGES will continue to accrue and periodic payments will continue to be due as set forth herein until the Maturity Date. If not sooner paid in full the entire balance hereunder shall be due and payable in full thirty (30) years from the date of this Agreement (the "Maturity Date").

The minimum monthly payments will not fully repay the outstanding balance of your Credit Line Account by the Maturity Date. Unless sooner repaid, all remaining sums which you owe under this Agreement shall be due and payable in full in a single "balloon payment" on the Maturity Date. All sums which are owed by you to us shall bear interest from and after the Maturity Date at the variable ANNUAL PERCENTAGE RATE indicated below.

**FINANCE CHARGES.** FINANCE CHARGES on each advance accrue from the date we make the advance until the date the advance is paid in full. This means there is no free ride period which would allow you to avoid a FINANCE CHARGE on advances on your Credit Line. FINANCE CHARGES accumulate each day until the exact current payoff amount is received and posted to your Credit Line Account. The exact current payoff amount as of any day is the aggregate of all unpaid advances, plus all accrued and unpaid FINANCE CHARGES plus other amounts due hereunder, if any. We will not charge interest on any undisbursed loan proceeds.

# EXHIBIT A

The periodic FINANCE CHARGE on your Credit Line for each billing period is a function of the Daily Periodic Rate (shown on your Periodic Statement) as defined below, the "Average Daily Balance" of your Credit Line Account (shown on your Periodic Statement) and the number of days in the billing period.

(a)   The "Daily Balance" of your Credit Line Account for each day will be the Total Balance at the beginning of that day plus new advances and charges less all payments and credits received that day and less any over limit fees, late fees and unpaid FINANCE CHARGES. The "Total Balance" is all amounts due on the Credit Line Account.

(b)   The "Average Daily Balance" is the sum of the Daily Balances of all days in the billing period divided by the number of days in the billing period.

(c)   The Daily Periodic Rate may vary within a single billing period. If the Daily Periodic Rate does not vary during the billing period, the periodic FINANCE CHARGE for the billing period is the Average Daily Balance multiplied by the applicable Daily Periodic Rate multiplied by the number of days in the billing period. If there is more than one Daily Periodic Rate within a billing period, the FINANCE CHARGE for the billing period will be the sum of the FINANCE CHARGES computed by multiplying the Average Daily Balance by each Daily Periodic Rate and then multiplying that number by the number of days that the Daily Periodic Rate is in effect during that billing period.

Additional FINANCE CHARGES may be imposed as provided in the paragraphs entitled "Minimum Draws and Other Limitations" and "Closing Costs and Lien Related Charges."

**Daily Periodic Rate and ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and corresponding ANNUAL PERCENTAGE RATE as follows:

For Credit Limits of $20,000 or greater, the ANNUAL PERCENTAGE RATE will be ___1.990___ percentage points (the "Margin") over the Index or ___0.000%, whichever is greater. For Credit Limits less than $20,000, the ANNUAL PERCENTAGE RATE will be ___1.990___ percentage points (the "Margin") over the Index or ___5.0%, whichever is greater. The Index is the Prime Rate most recently published by the *Wall Street Journal* in its "MONEY RATES" table effective on the 15th day of the month, prior to the Interest Change Date as defined below. If more than one Prime Rate is identified in the *Wall Street Journal's* "MONEY RATES" table, the Index shall be the highest of such rates. If the Index is no longer available, we will choose a new Index. The new Index will have a historical movement substantially similar to the original Index, and the new Index and Margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable.

The ANNUAL PERCENTAGE RATE will be divided by 365 (366 in a leap year) to get the Daily Periodic Rate. The Current Daily Periodic Rate (based on Index plus Margin) is ___0.01641%___ (that is an ANNUAL PERCENTAGE RATE of ___5.990 %) as of the date below. If the box is checked below, your current Daily Periodic Rate is as indicated below.

The Daily Periodic Rate and ANNUAL PERCENTAGE RATE may increase or decrease monthly on the first calendar day of the month ("Interest Change Date") after any initial period set forth below. However, except as set forth below, the Daily Periodic Rate will never be more than ___0.04932%___ (that is an ANNUAL PERCENTAGE RATE of ___18.000 %) and, if the Credit Limit is less than $20,000, the Daily Periodic Rate will never be less than ___0.01370 %___ (that is an ANNUAL PERCENTAGE RATE of ___5.0 %). The ANNUAL PERCENTAGE RATE does not include costs other than interest. Increases in the Daily Periodic Rate and ANNUAL PERCENTAGE RATE will increase your Minimum Monthly Payment, as defined below, FINANCE CHARGES and your final "balloon payment" due on the Maturity Date.

☐   If this box is checked, notwithstanding the above, the initial Daily Periodic Rate used to compute the FINANCE CHARGE is ___% (that is an ANNUAL PERCENTAGE RATE of ___%). Immediately following the six month anniversary of the Effective Disbursement Date, defined below, and on the first day of the month every month thereafter (each "Interest Rate Change Date"), your rate may change as set forth above.

If a law, which applies to this Agreement and which sets maximum interest rates, is finally interpreted by a court having jurisdiction so that the interest or other charges collected or to be collected in connection with this Agreement exceed the permitted limit, then to the extent permitted by law: (1) the interest and/or other charges payable hereunder shall be reduced by the amount necessary to reduce them to the permitted limit; and (2) any sums already collected which exceed the permitted limit will be refunded to you. We may choose to make this refund by reducing the principal you owe under this Agreement or by making a direct payment to you.

**Cancellation Fee.** If you cancel your Credit Line Account during the first 36 months following the Effective Disbursement Date, defined below, you will be charged a cancellation fee as follows:

☒   .125% of the original line amount or $500, whichever is greater.

☐   If you are entering into this Agreement to increase an existing home equity line of credit from us (the "Previous Credit Line Account") and the agreement relating to the Previous Credit Line Account provided for a cancellation fee then you will be charged a cancellation fee based on the original terms of the Previous Credit Line Account Agreement if you cancel this Agreement within 36 months following the Effective Disbursement Date (as defined in the Agreement relating to the Previous Credit Line Account).

**Credit Advances.** Provided you are not in default and your right to credit advances has not been terminated, suspended or cancelled, you may obtain advances after the Effective Disbursement Date (as defined below) as follows:

(a)   Writing a preprinted Check that we supply to you for use with your Credit Line ("Check" or "Checks").

(b)   Using the Card to effect purchases, to obtain cash advances at authorized automated teller machines (using the personal identification number that we will supply to each of you) or to obtain cash advances at other locations.

(c)   Unless prohibited by law, requesting a credit advance from your Credit Line by telephone to be applied to a deposit account with us designated by you (or any of you, if more than one) and acceptable to us. If telephone access is authorized hereunder, you may access your Credit Line by using your deposit account number and the passcode supplied by us. Use of your deposit account number and passcode by you, or anyone to whom you have given these numbers, will act as your authorization and signature. Advances requested by telephone must be deposited in your designated deposit account. You authorize and direct us to transfer advances from the Credit Line Account to your designated deposit account, provided you identify yourself to our satisfaction when requesting the telephonic draw.

(d)   Requesting a credit advance in person at any of our Financial Centers.

All advance requests by use of Checks must be in U.S. currency.

**Foreign Exchange.** If you make a purchase or an advance in foreign currency, it will be converted by Visa International into U.S. Dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, those regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect (1) day prior to the processing date, increased by 1%. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

The "Effective Disbursement Date" means a date on or after the date when the Agreement is accepted by us in the state of OREGON and you have met all conditions for the Credit Line. You agree and understand that you may not receive any credit advance under this Agreement until after the Effective Disbursement Date.

Each of you irrevocably authorizes us to add any of the above advance request features at any time and honor requests by any of these methods requested by any other of you, at any time in the future, even if not presently requested. You also authorize us to add any new access service or device which might be available from time to time as any one of you might request in connection with this Credit Line. You further agree that the terms and conditions of this Agreement, together with any specific terms covering such new service or device, will govern any transaction made pursuant to any of these services or with use of such devices.

Each of you further irrevocably authorizes us to charge your Credit Line Account for advance requests made by any of you, even if such would cause the balance to exceed your Credit Limit. All such advances constitute a loan to you and shall be subject to FINANCE CHARGES and other terms and conditions hereof.

In addition, we may charge your Credit Line to pay fees and costs that you are obligated to pay under this Agreement or under any document related to your Credit Line, including the Security Instrument. We may also charge your Credit Line for funds required for continuing insurance coverage as described in the Security Instrument or other documents related to your Credit Line or to pay any cost or expense to protect or perfect our security interest in the Property. These costs and expenses include, without limit, payments to cure defaults under any existing lien on the Property. If you do not pay your property taxes, we may charge your Credit Line Account and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease funds available under your Credit Line and will be considered part of your Daily Balance for purposes of calculating FINANCE CHARGES. Nothing in this paragraph requires us to provide any advances under this paragraph.

Adjustments. We may make adjustments to your Credit Line Account from time to time which reflect corrections, for example, if advances or credits were posted in the wrong amount, or to the wrong account, if posting is delayed or an item is returned unpaid.

Minimum Draws and Other Limitations. If the advance is by means of a Card, there is no minimum amount for purchase transactions under this Agreement. In all other situations, you may make requests for advances in amounts of not less than $100.00 without a Transaction Fee FINANCE CHARGE. We may, at our option, refuse to accept an advance in an amount of less than $100.00 or, at our option, honor such request and charge you a Transaction Fee FINANCE CHARGE of 4% of the amount advanced.

We may, but reserve the right not to, honor any requests for advances hereunder in the following circumstances:
   (a)   If your credit privileges have been cancelled, suspended or terminated hereunder.
   (b)   Your Credit Limit is currently exceeded or would be exceeded if we honored the advance requested.
   (c)   Your Check is post-dated (written and presented before the date on the item) or stale dated (presented more than six months after the date of the item).
   (d)   Your Check bears a restriction or notation.
   (e)   Your Checks have been reported lost or stolen or, if telephone or other transfers requiring a passcode have been authorized hereunder, you have reported that your passcode has been compromised.
   (f)   You are in material default of this Agreement or would be so if we honored the advance request.
   (g)   We receive conflicting instructions or demands from any of you.
   (h)   If you have caused us to prepare a payoff demand statement setting forth the amounts required to satisfy your obligations under this Agreement.

If we honor a Check with a restriction or notation (e.g. void after six months or two signatures required), we may disregard such restriction or notation. If you write a Check with a restriction or notation or which is post or stale dated, such is between you and the payee only and shall have no effect on us. You agree to accept all responsibility for payment of such items.

If we receive conflicting demands or instructions from any of you, we may, at our option, refuse to make any advance that has not been requested by all of you together. In no event will we be liable for delay or refusal to follow instructions that occurs as a result of an actual or apparent conflict.

You agree to indemnify and hold us harmless for any claim or loss the payee or any other endorser or depositing or collecting bank may assert regarding such restrictions, notations or post or stale dated items. You further agree to indemnify and hold us harmless for any claim or loss relating to honoring or refusing to honor any instructions or demands which we believe may be conflicting.

If we honor any advance request under any of these conditions, you must repay us, subject to applicable laws, for the amount of the advance in accordance with the terms of this Agreement. We will not be liable for failure to honor any draw request under any of these conditions. Our liability, if any, for wrongful dishonor of an advance request is limited to your actual damages, shall not include consequential damages and in no event will such exceed the amount of the advance request.

Checks may be processed mechanically based on information encoded on the item. Checks not meeting our format and encoding specifications may not be honored. The signature should match the signature on file with us, however, we may not verify the signature if the item is processed mechanically. Checks bearing signatures which in our opinion do not satisfactorily compare with the specimen signatures may be rejected and returned unpaid and we will not be liable for wrongful dishonor related thereto.

We do not "certify" Checks drawn on your Credit Line.

Checks or advance requests, but not Card purchases or transactions, that are not honored for any reason will be assessed a Reject Fee of $20.00.

Illegal Transactions. Notwithstanding anything in this Agreement to the contrary, you agree that you will not use the Card, a Check or other access device to engage in an illegal transaction. This includes, but is not limited to, illegal gambling.

Periodic Statement. Each month your Credit Line Account has any balance owing or a credit balance, or each month in which a FINANCE CHARGE is imposed, we will mail to you a billing statement ("Periodic Statement") showing, among other things, all new transactions since the prior Periodic Statement closing date, the Periodic Statement closing date, the total amount you owe us as of the Periodic Statement closing date (labeled "New Balance"), the FINANCE CHARGES, other charges and ANNUAL PERCENTAGE RATE for the billing period covered by the Periodic Statement. The Periodic Statement may not be on a calendar month basis. We reserve the right to change the Periodic Statement closing date.

We may choose not to return Checks along with your Periodic Statement and may retain copies of such Checks. If you request copies of Checks or other research relating to your Credit Line Account, we may assess a copy fee of $1.00 per item and research fees of $10.00 per hour.

**Payments.** Payments are due monthly on a date (the "Payment Due Date") which we select, between and including the 1st through the 28th, and which date may be changed from time to time, at our option. Your minimum monthly payment ("Minimum Payment") during both the Draw Period and the Post Draw Period will be equal to all accrued but unpaid FINANCE CHARGES, Late Fees and Other Fees and Charges.

You may pay more than the Minimum Payment due without penalty at any time. Payments in excess of your Minimum Payment do not relieve you of your obligation to continue to make your Minimum Payments.

All payments must be made in good funds by check, money order, wire transfer, automatic or other transfer from an account at an institution offering such service, or other instrument in U.S. Dollars. Such payments shall be made to:

WASHINGTON MUTUAL BANK

CONSUMER LOAN SERVICING
PO BOX 91006
SEATTLE, WA 98111          or to the address appearing on your Periodic Statement for receipt of payments. If made by mail, such shall be postage prepaid. Payments received will be applied against your outstanding balance in the following order: to accrued but unpaid FINANCE CHARGES, then to late fees, then to other fees and charges, then to principal not yet due.

We can accept and apply any late or partial payments or payments marked "Payment in Full" or similar statement, or with a request to apply a payment in a particular manner to amounts you owe under this Agreement without liability on our part and without losing any of our rights under this Agreement.

**Closing Costs and Lien Related Charges.** You agree to pay the following fees and charges at the time you open your Credit Line Account or, if Federal law gives you the right to rescind this Agreement, upon expiration of the rescission period. They will be charged to your Credit Line Account on the Effective Disbursement Date unless paid in cash to us on or before that date. If these amounts are charged to your Credit Line Account, FINANCE CHARGES on these amounts will begin to accrue immediately:

**FINANCE CHARGES**                              **OTHER CHARGES**

At closing or while your Credit Line Account is open, you may have to pay a fee, estimated to be $50.00 to $250.00, and costs to have our lien subordinated if we agree to such, at our option. Such fee is considered a FINANCE CHARGE. In addition, at the time your Credit Line Account is terminated you may have to pay a fee and costs to have our lien reconveyed/released/recorded, estimated to be up to $65.00.

**Annual Fee.** You agree to pay an annual fee of $45.00 ("Annual Fee"). The Annual Fee will be charged to your Credit Line Account on the first anniversary of your Credit Line Account and each year thereafter during the Draw Period.

**Late Fees and Collection Charges.** In addition to our rights upon default, if we do not receive your required Minimum Payment within  15  days after the Payment Due Date shown on your Periodic Statement, you will be charged a late fee of  TEN  dollars (  $10.00  ) or  FIVE  percent (  5.000 %) of the amount then due, whichever is  less . In addition, upon default, unless prohibited by applicable law, you agree to pay all our reasonable costs and collection charges, including without limit, whether or not there is a lawsuit, attorneys' fees and legal expenses, including without limit, for bankruptcy or civil proceedings including our efforts to modify or vacate an automatic stay or injunction, appeals and any anticipated post-judgment collection services and whether or not such are incurred by our employees or third parties.

**Other Fees and Charges.**
    (a)  **Returned Items.** You may be charged $20.00 if you pay your Credit Line obligations with a check, draft, other item or transfer that is dishonored for any reason, unless applicable law requires a lower charge or prohibits such charge.
    (b)  **Stop Payment.** You may be charged $20.00 when you request a stop payment on a Check. A stop payment shall be effective for such period as provided by law and must be delivered to us in the manner prescribed by law or by method acceptable to us in our sole discretion and in sufficient time for us to act. If a stop notice expires, you must renew as set forth above and you may be assessed an additional Stop Payment Fee. There is no right to stop payment on transactions by use of a Card or other means of access.
    (c)  **Over Limit Charge.** You may be charged  $20.00  for each advance which causes you to exceed, or if you are then in excess of, your Credit Limit.
    (d)  A cash advance fee FINANCE CHARGE of two (2)% of the cash advance obtained on the Card or $2.00, whichever is greater.
    (e)  A copy fee of $1.00 each time you request a copy of a Check.
    (f)  You may be charged a $60.00 fee each time you order a pay off statement on your Credit Line Account.
    (g)  If you ask us to research a Check, you may be charged a Research Fee of $10.00 per hour.
    (h)  If you make a transaction with a Check and we reject the Check, you may be charged a $20.00 Reject Fee.

If you use your Card to obtain cash advances at other institutions those institutions may impose additional transaction fees.

**Loss or Theft.** You may be liable for unauthorized use of your Credit Line Account. You will not be liable for unauthorized use that occurs after you notify us. You will not, in any event, be liable for unauthorized use of the Card. Notify us by telephone, telegraph, letter or any other reasonable means (but not on or with your periodic payment) that any unauthorized use of your Credit Line Account has or may occur as a result of loss or theft of one or more of your Checks, Cards or any other access device or if you believe someone else knows your personal identification number or your passcode for making telephone or other advance requests. Such notice must be given within a reasonable amount of time. Written notice is not effective until received by us, or whether or not received, ordinarily at the expiration of the time required for transmission, whichever is earlier.

**EXHIBIT A**

Northridge, CA 91328-1151 or call ___(800) 556-5678___ . You agree to reasonably assist us in determining the facts and circumstances relating to any unauthorized use of your Credit Line Account.

**Setoff.** You authorize us, unless prohibited by applicable law, to charge or setoff all sums owing on this Agreement against any and all accounts, whether checking, savings or otherwise, including without limit, all accounts held jointly with someone else and all accounts you may open in the future.

**Termination and Suspension of Privileges; Acceleration.**
We may terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen
    (a)   You commit fraud or make a material misrepresentation at any time in connection with this Credit Line Account. This can include, for example, a false statement about your income, assets, liabilities or any other aspect of your financial condition.
    (b)   You do not meet the repayment terms of this Agreement.
    (c)   Your action or inaction adversely affects the Property or our rights in the Property. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property which impairs our security, failure to pay taxes, death of the last Borrower on the Credit Line, death of one or more persons liable on the account which impairs our security, transfer of title or sale of the Property, creation of a senior lien on the Property without our permission, foreclosure by the holder of a prior lien on the Property or use of the funds or the Property for a prohibited purpose which impairs our security.

If we terminate your Credit Line Account, your Credit Line will be suspended and the entire balance of your Credit Line Account will be immediately due and payable without prior notice, except as may be required by law, and you agree to pay immediately such amount plus any other amounts due hereunder.

In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:
    (a)   The value of the Property declines significantly below the value as determined by us at the time you applied for your Credit Line Account. This includes, for example, a decline such that the difference between the Credit Line and the available equity is reduced by fifty percent (50%) and may include a smaller decline depending on individual circumstances.
    (b)   We reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances.
    (c)   You are in default of a material obligation of this Agreement. We consider all of your obligations to be material. Categories of material obligations include, for example, the events described above permitting us to terminate, obligation to pay fees and charges, obligations and limitations on receipt of credit advances, obligations concerning maintenance or use of the Property or proceeds, obligations to pay and perform the terms of the Security Instrument or any other deed of trust, mortgage, trust indenture, security agreement or lease on the Property, obligations to notify us and to provide documents and information to us, such as updated financial information and obligations to comply with applicable law, such as zoning restrictions.
    (d)   We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.
    (e)   The priority of our security interest in the Property is adversely affected by government action to the extent that the value of the security interest is less than 120% of the Credit Line.
    (f)   We have been notified by a government authority that continued advances may constitute an unsafe and unsound business practice.
    (g)   If the maximum **ANNUAL PERCENTAGE RATE** has been reached.

If we suspend your Credit Line, you will lose your right to obtain credit advances. However, all other terms of this Agreement will remain in effect and be binding upon you, including, without limit, your liability for any further unauthorized use of any Checks, or other access devices or service and for advances related to fees and charges assessed or costs incurred by us.

If your Credit Line is cancelled, suspended or terminated, you agree not to attempt to write or deliver any Checks or use a Card or any other access service or device. Any use of Checks, Cards or other access service or device may be considered fraudulent. You will also remain liable for any further use of Checks, Cards or other access service or device even after cancellation (regardless of whether you cancel or we cancel), termination or suspension, including all FINANCE CHARGES and Other Fees and Charges. If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or release of your Security Instrument for a reasonable period of time to enable us to post to your Credit Line Account any advances that you have received.

To the extent permitted by law, any rights hereunder shall be in addition to any other rights Lender may have hereunder or at law or in equity.

**Delay in Enforcement.** To the extent permitted by law, we may delay or waive the enforcement of any of our rights under this Agreement without losing that right and any other right; and if we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice.

**Presentment.**
You, to the extent permitted by law, waive any statutes of limitations, and any legal requirements of presentment, demand, protest, notice of dishonor and notice of protest of this Agreement.

**Credit Information.** You agree that you will provide us with a current financial statement, a new credit application or both annually if requested by us. Based on this information, we may conduct an annual review of your Credit Line Account. You also agree that we may obtain credit reports on you at any time, at our sole option, annually or at our option at any other time including, for determining whether there has been a change in your financial condition or the purpose of reviewing or collecting your Credit Line Account. You authorize us to release information to others (such as credit bureaus, merchants, other financial institutions and any of our affiliate companies) about the status and history of your Credit Line Account. You also agree that we may release information to comply with governmental reporting or legal processes which we believe may be required, whether or not such is, in fact, required or when necessary or helpful in completing a transaction, or when investigating a loss or a potential loss. YOU ARE HEREBY NOTIFIED THAT A NEGATIVE CREDIT REPORT REFLECTING ON YOUR CREDIT RECORD MAY BE SUBMITTED TO A CREDIT REPORTING AGENCY IF YOU FAIL TO FULFILL THE TERMS OF YOUR CREDIT OBLIGATIONS.

**Transfer and Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity or person. Your rights under this Agreement belong to you only and may not be transferred, assumed or assigned. Your obligations, however, are binding upon your heirs and legal representatives.

**Notices.** You agree to notify us immediately if you change your name, your address or your employer, if you lose any of your Checks, Cards or other device or any other access service or device is compromised, if any unauthorized person uses your Credit Line Account or if any of you dies, is declared incompetent or is the subject of a bankruptcy or insolvency proceeding. You agree that a notice of incompetence is not effective unless issued by a court having jurisdiction and we receive notice and instruction from the court. Notwithstanding the above, we may, at our option, accept other evidence of incompetence acceptable to us. You agree to indemnify and hold us harmless relating to acceptance or non-acceptance of proof of incompetence in any transactions.

Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices shall be deemed given when deposited in the U.S. mail, postage prepaid first class mail, or when delivered in person, or sent by registered or certified mail, or by nationally recognized overnight carrier. Notice to you shall be sent to your last known address in our records for this Credit Line Account. Notice to any of you shall be deemed notice to all of you. Notice to us shall be sent to:

WASHINGTON MUTUAL BANK
CONSUMER LOAN SERVICING
PO BOX 91006
SEATTLE, WA 98111

Any party may change its address for receipt of notices hereunder by giving notice, as set forth herein, to the other parties specifying the purpose of the notice is to change the party's address.

**Tax Consequences.** You understand that neither we, nor any of our employees or representatives, makes any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest and charges and that neither we, nor any of our employees or representatives will be liable in the event interest and charges on your Credit Line are not deductible. You should consult your own tax advisor regarding the tax deductibility of interest and charges under this Agreement.

**Amendment.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account or if the change is insignificant (such as a change relating to our data processing systems).

**Governing Law.** Regardless of where you reside or where you use your Credit Line Account, this Agreement and your Credit Line Account will be governed by and interpreted in accordance with the laws of the United States of America and, to the extent that the laws of the United States of America are not applicable, with the internal laws of the State of _____OREGON_____ (without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the United States of America or the State of _____OREGON_____ to the rights and duties of the parties). This Agreement is entered into by the parties in the State of _____OREGON_____. All credit advances under this Agreement are being made by the Bank from its' offices located in the State of _____OREGON_____.

**Interpretation.** The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. You agree that this Agreement is the best evidence of your agreement with us. If a court responsible for interpreting this Agreement finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid and enforced and the rest of this Agreement is therefore binding, valid and enforceable. If we go to court or otherwise seek to enforce this Agreement, we can use a copy of any Periodic Statement, this Agreement or any other document to prove what you owe us or that a transaction took place or otherwise. The copy will have the same validity as the original.

**Optional Credit Insurance.** Credit life insurance is optional and is not required to obtain this loan. No insurance will be provided unless you sign for this optional insurance as set forth below, you submit any necessary insurance applications, and the insurance is accepted by the insurance company. Only the person(s) who signs is insured. The terms of the coverage will be described in the policies or certificates of insurance issued by the insurance company. The credit insurance premiums will not be included in the Average Daily Balance and FINANCE CHARGES will not accrue on the premiums. Please note that even if you sign below that you want credit life insurance, you must complete an application and your application must be accepted by the insurer before insurance will be provided.

| TYPE | PREMIUM | SIGNATURE(S) |
|---|---|---|
| Single Credit Life | N/A Per N/A<br>per month on the Average Daily Balance | Signature of borrower to be insured<br>_____ |
| Joint Credit Life | N/A Per N/A<br>per month on the Average Daily Balance | Signatures of borrowers to be insured<br>_____<br>_____ |
| We do not want the above optional insurance.<br><br>_____<br>Signature | | _____<br>Signature |

We may, to the extent permitted by law, provide insurance through an insurance company that is affiliated with us.

Billing Rights.

**YOUR BILLINGS RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us (on a separate sheet) at:

WASHINGTON MUTUAL BANK
CONSUMER LOAN SERVICING
PO BOX 91006
SEATTLE, WA 98111

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
  *Your name and account number.
  *The dollar amount of the suspected error.
  *Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your deposit account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**EXHIBIT A**

Case 17-60930-tmr13    Doc 38    Filed 07/03/17

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we can not collect the first $50.00 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or the services. There are two limitations on this right:

    (a)   You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
    (b)   The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**Acknowledgment.**
BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT AND AGREE TO ITS TERMS. YOU ALSO ACKNOWLEDGE RECEIPT OF A COPY OF THIS AGREEMENT.

_____
TRAVIS W KERNS

_____
TONYA S KERNS



**EXHIBIT A**

# EXHIBIT B

Division of Chief Deputy Clerk
Lane County Deeds and Records

$51.00

12/29/2003 11:11:03 AM

RPR-DTR  Cnt=1  Stn=8  CASHIER 01
$30.00 $10.00 $11.00

Recording requested by and,
when recorded return to:
WASHINGTON MUTUAL BANK
2150 CABOT BLVD. WEST

LANGHORNE, PA 19047
ATTN: GROUP 9, INC.

Loan Number: ██████████



LINE OF CREDIT DEED OF TRUST
(OREGON)

THIS DEED OF TRUST is between:
TRAVIS W. KERNS & TONYA S. KERNS

whose address is:
77315 LONDON RD   COTTAGE GROVE, OR 97424
("Grantor"); GROUP 9, INC. _____, a
PENNSYLVANIA _____ corporation, the address of which is
2150 CABOT BLVD. WEST  LANGHORNE, PA 19047
("Trustee"); and
"Washington Mutual Bank, which is organized and existing under the laws of
Washington State and whose address is 1201 Third Avenue, Seattle, Washington
98101 ("Beneficiary") and its successors or assigns".
The maximum principal amount to be advanced pursuant to Credit Agreement secured hereby is
____$27,400.00____. The Debt, as defined below, is due and payable in full, if not paid
early on __01/08/2034__.
   1.   **Granting Clause.** Grantor hereby grants, bargains, sells, and conveys to Trustee in trust,
with the power of sale, the real property in _____LANE_____ County,
_____OREGON_____, described below, and all rights and interest in it Grantor ever gets:

LYING AND BEING LOCATED IN THE UNINCORPORATED AREA, COUNTY OF LANE, STATE OF
OREGON; ALL THAT CERTAIN PARCEL OR TRACT OF LAND KNOWN AS:

LOT 2, BLOCK 1, GLEN ARNE SUBDIVISION, AS PLATTED AND RECORDED IN BOOK 18,
PAGE 11, LANE COUNTY OREGON PLAT RECORDS, IN LANE COUNTY, OREGON.

Tax Parcel Number: __0940641__

3399 (02/04/03) W4.2                    BANK                    Page 1 of 6

**EXHIBIT B**

together with all insurance and condemnation proceeds related to it; all income, rents and profits from it; all plumbing, lighting, air conditioning and heating apparatus and equipment; and all fencing, blinds, drapes, floor coverings, built-in appliances, and other fixtures, at any time installed on or in or used in connection with such real property.

All of the property described above will be called the "Property." If any of the Property is personal property, this Deed of Trust is also a Security Agreement which grants Beneficiary, as secured party, a security interest in all such property. As used herein "State" shall refer to the State of Oregon.

2.   **Obligation Secured.**  This Deed of Trust is given to secure performance of each promise of Grantor contained herein and in a Home Equity Line of Credit Agreement and Disclosure with Beneficiary with a maximum credit limit of _____$27,400.00_____ (the "Credit Agreement"), including any extensions, renewals or modifications thereof, and repayment of all sums borrowed by Grantor under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for variable and fixed rates of interest. Under the Credit Agreement, the Grantor may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Deed of Trust. This Deed of Trust also secures payment of certain fees and charges payable by Grantor under the Credit Agreement, certain fees and costs of Beneficiary as provided in Section 9 of this Deed of Trust, and repayment of money advanced by Beneficiary to protect the Property or Beneficiary's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that unless sooner repaid, the Debt is due and payable in full thirty (30) years from the date of this Deed of Trust which is ___01/08/2034___ (the "Maturity Date"). All amounts due under the Credit Agreement and this Deed of Trust are called the "Debt."

3.   **Representations of Grantor.**  Grantor represents that:
     (a)   Grantor is the owner of the Property, which is unencumbered except by: easements reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage·or deed of trust given in good faith and for value, the existence of which has been disclosed in writing to Beneficiary; and
     (b)   The Property is not used for any agricultural or farming purposes.

4.   **Promises of Grantor.**  Grantor promises:
     (a)   To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Beneficiary's written consent;
     (b)   To allow representatives of Beneficiary to inspect the Property at any reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;
     (c)   To pay on time all lawful taxes and assessments on the Property;
     (d)   To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
     (e)   To see to it that this Deed of Trust remains a valid lien on the Property superior to all liens except those described in Section 3(a), and to keep the Property free of all encumbrances which may impair Beneficiary's security. It is agreed that if anyone asserts the priority of any encumbrance other than those described in Section 3(a) over this Deed of Trust in any pleading filed

**EXHIBIT B**

in any action, the assertion alone shall be deemed to impair the lien of this Deed of Trust for purposes of this Section 4(e); and

(f) To keep the improvements on the Property insured by a company satisfactory to Beneficiary against fire and extended coverage perils, and against such other risks as Beneficiary may reasonably require, in an amount equal to the full insurable value of the improvements, and to deliver evidence of such insurance coverage to Beneficiary. Beneficiary shall be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy may be applied upon any indebtedness hereby secured in the same manner as payments under the Note, or at Beneficiary's sole option, released to Grantor. In the event of foreclosure or sale of the Property pursuant to the Trustee's power of sale, all rights of the Grantor in insurance policies then in force shall pass to the purchaser at the Sheriff's or Trustee's sale.

(g) To sign all financing statements and other documents that Beneficiary may request from time to time to perfect, protect and continue Beneficiary's security interest in the Property. Grantor irrevocably appoints Beneficiary as Grantor's attorney-in-fact to execute, file and record any financing statements or similar documents in Grantor's name and to execute all documents necessary to transfer title if there is a default.

(h) To advise Beneficiary immediately in writing of any change in Grantor's name, address or employment.

5. **Sale, Transfer or Further Encumbrance of Property.** The Loan is personal to Grantor and the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by Grantor, including without limit, any further encumbrance of the Property.

6. **Curing of Defaults.** If Grantor fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or deed of trust, Beneficiary may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Grantor's failure to comply. Repayment to Beneficiary of all the money spent by Beneficiary on behalf of Grantor shall be secured by this Deed of Trust; at Beneficiary's option, advance may be made against the Credit Agreement to pay amounts due hereunder; such shall not relieve Grantor from liability for failure to fulfill the covenants in Section 4. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Grantor on demand. Although Beneficiary may take action under this paragraph, Beneficiary is not obligated to do so.

7. **Remedies For Default.**

(a) Prompt performance under this Deed of Trust is essential. If Grantor doesn't pay any installment of the Debt on time, or any other event occurs that entitles Beneficiary to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of the Beneficiary, and all unpaid principal will thereafter bear interest at the Default Rate specified in the Credit Agreement. Additionally, if Beneficiary so requests in writing, Trustee shall sell the Property in accordance with Oregon law, at public auction to the highest bidder. Any person except Trustee may bid at the Trustee's sale. Trustee shall apply the proceeds of the sale as follows: (i) to the expenses of the sale, including a reasonable trustee's fee and attorney's fee, (ii) to the obligations secured by this Deed of Trust; and (iii) the surplus, if any, shall be distributed in accordance with Oregon law.

(b) Trustee shall deliver to the purchaser at the sale its deed, without warranty, which shall convey to the purchaser the interest in the Property which Grantor had or had the power to convey at the time of execution of this Deed of Trust and any interest which Grantor subsequently

**EXHIBIT B**

acquired. The Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of law and of this Deed of Trust. This recital shall be prima facie evidence of such compliance and conclusive evidence of such compliance in favor of bona fide purchasers and encumbrancers for value.

(c) The power of sale conferred by this Deed of Trust is not an exclusive remedy. Beneficiary may cause this Deed of Trust to be foreclosed as a mortgage or sue on the Credit Agreement according to law. In connection with any portion of the Property which is personal property, Beneficiary shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the state of Oregon.

(d) By accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8.  **Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the obligation secured by this Deed of Trust, shall be paid to Beneficiary to be applied to the obligation.

9.  **Fees and Costs.** Grantor shall pay Beneficiary's and Trustee's reasonable cost of searching records, other reasonable expenses as allowed by law, and reasonable attorney's fees, in any lawsuit or other proceeding to foreclose this Deed of Trust; in any lawsuit or proceeding which Beneficiary or Trustee prosecutes or defends to protect the lien of this Deed of Trust; and, in any other action taken by Beneficiary to collect the Debt, including without limitation any disposition of the Property under the State Uniform Commercial Code; and, any action taken in bankruptcy proceedings as well as any appellate proceedings.

10. **Reconveyance.** Trustee shall reconvey the Property to the person entitled thereto, on written request of Beneficiary, or following satisfaction of the obligations secured hereby, and Beneficiary and Trustee shall be entitled to charge Grantor a reconveyance fee together with fees for the recordation of the reconveyance documents unless prohibited by law.

11. **Trustee; Successor Trustee.** Beneficiary may, at its option, unless prohibited by law, appoint a successor Trustee from time to time in the manner provided by law. The successor trustee shall be vested with all powers of the original trustee. The Trustee is not obligated to notify any party hereto of a pending sale under any other deed of trust or of any action or proceeding in which Grantor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

12. **Miscellaneous.** This Deed of Trust shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto. The term "Beneficiary" shall mean the holder and owner of the note secured by this Deed of Trust, whether or not that person is named as Beneficiary herein. The words used in this Deed of Trust referring to one person shall be read to refer to more than one person if two or more have signed this Deed of Trust or become responsible for doing the things this Deed of Trust requires. This Deed of Trust shall be governed by and construed in accordance with federal law and, to the extent federal law does not apply, the laws of the State. If any provision of this Deed of Trust is determined to be invalid under law, the remaining provisions of this Deed of Trust shall nonetheless remain in full force and effect.

13. **Beneficiary and Similar Statements.** Beneficiary may collect a fee in the maximum amount allowed by law, for furnishing any beneficiary statement, payoff demand statement or similar statement.

**EXHIBIT B**

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF ACCEPTABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES.

By signing below, Grantor accepts and agrees to the provisions of this Deed of Trust and of any rider(s) executed by Grantor concurred therewith.

DATED AT _Springfield_ , _oregon_ this _10_ day of _December_ , _2003_ .

GRANTOR(S):

_____
TRAVIS W KERNS

_____
TONYA S KERNS

STATE OF _Oregon_ )
                                 ) ss.
COUNTY OF _Lane_ )

This instrument was acknowledged before me on _12/10/2003_, by
_Travis Wrens_ and _Tonya S Kems_
_____.

OFFICIAL SEAL
DELORES PUTZIER
NOTARY PUBLIC - OREGON
COMMISSION NO. A347915
MY COMMISSION EXPIRES JULY 18, 2005

Notary Public for: _Oregon_
My Commission expires _7-18-05_

---

### REQUEST FOR FULL RECONVEYANCE
**Do not record. To be used only when Grantor's
indebtedness has been repaid and Credit Agreement cancelled.**

TO:   TRUSTEE _____

The undersigned is Beneficiary of the within Deed of Trust, and the legal owner and holder of
the Home Equity Line of Credit Agreement secured thereby. Said Deed of Trust is hereby
surrendered to you for reconveyance and you are requested, upon payment of all sums owing to
you, to reconvey, without warranty, to the person(s) entitled thereto, the right, title and interest
now held by you thereunder.

DATED _____

                    By _____

                    Its _____

**EXHIBIT B**

Case 17-60930-tmr13    Doc 38    Filed 07/03/17

# EXHIBIT C

Lane County Clerk
Lane County Deeds and Records

████████

$47.00

02/08/2016 10:11:36 AM
RPR-ASN  Cnt=1  Stn=40  CASHIER 01
$5.00 $10.00 $11.00 $21.00

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683
Loan #█████████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **THE FEDERAL DEPOSIT INSURANCE CORPORATION, A CORPORATION ORGANIZED AND EXISTING UNDER AN ACT OF CONGRESS (FDIC), WHOSE ADDRESS IS 1601 BRYAN STREET, DALLAS, TX 75201, AND ACTING IN ITS RECEIVERSHIP CAPACITY AS RECEIVER OF WASHINGTON MUTUAL BANK, (ASSIGNOR)** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to:**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203**████, **ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust is dated 12/10/2003, and executed by **TRAVIS W KERNS AND TONYA S KERNS** to **WASHINGTON MUTUAL BANK**, and recorded on 12/29/2003, in Book n/a, Page n/a and Doc # 2003-123122, in the office of the Recorder of LANE County, Oregon.

Modification: DT 06/23/2006 REC DT 07/12/2006 INST # 2006-048572 Modification: DT 01/05/2007 REC DT 02/02/2007 INST# 2007-007351.

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on O1 / 27 / 2016 (MM/DD/YYYY).
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK

By: _Robert L Thompson II_
Robert L. Thompson II
Vice President

STATE OF LOUISIANA    PARISH OF OUACHITA.
On O1 / 27 / 2016 (MM/DD/YYYY), before me appeared Robert L Thompson II to me personally known, who did say that he/she/they is/are the Vice President of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Angela Ruth Payne_
Angela Ruth Payne
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

ANGELA RUTH PAYNE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 60422

Document Prepared By: Robert L. Thompson II, JPMorgan Chase Bank, N.A., 780 Kansas Lane, Suite A, Monroe, LA, 71203, ████

**EXHIBIT C**

# CERTIFICATE OF SERVICE

I certify that on **July 03, 2017**, I served a true and complete copy of this
**STIPULATION RE: MOTION TO VALUE PROPERTY PURSUANT TO 11 U.S.C. §506
AND AVOID WHOLLY UNSECURED LIEN IN A CHAPTER 13 CASE** to the parties
listed below as follows:

**Via CM/ECF Electronic Transmission:**

United States Trustee, USTPRegion18.EG.ECF@usdoj.gov

Chapter 13 Trustee, Naliko Markel, ecf@eugene13.com

Attorney for Debtors: Judson M Carusone, judBKlaw@gmail.com


**Via First Class, Regular Mail:**

Travis Wayne Kerns
Tonya Sue Kerns
77315 London Rd
Cottage Grove, OR 97424


By: /s/ Esteban Garcia_____
ESTEBAN GARCIA